**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JANICE PARNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-02115-TWP-MG |
| | ) | |
| REPUBLIC SERVICES OF INDIANA, LIMITED | ) | |
| PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment (Dkt. 31) filed by

Defendant Republic Services of Indiana, Limited Partnership ("Republic") and a Motion to Strike

Parnell's Response in Opposition to the Motion to Dismiss (Dkt. 25).[1]  *Pro se* Plaintiff Janice

Parnell ("Parnell") initiated this action bringing claims against her employer, Republic, for

discrimination because of her race (Black), failure to promote, hostile work environment and

retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq. (Dkt. 1). For the reasons discussed

below, Republic's motion for summary judgment is **granted** and the motion to strike is **denied as**

**moot**.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of

Civil Procedure 56, the facts are presented in the light most favorable to Parnell as the non-moving

party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,*

---

[1] The Motion to Strike seeks dismissal of Plaintiff's Response in Opposition to Defendant Keenan Gibbons' Motion to Dismiss (Dkt. 24).  However, Parnell voluntarily dismissed Gibbons as a party in this action so the Motion to Strike is now moot.

477 U.S. 242, 255 (1986). However, the Court need not credit assertions that are contradicted by the record. *See Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") (cleaned up).

**A.      Factual Disputes in Parnell's Response**

As an initial matter, Republic argues that Parnell has failed to comply with Federal and Local Rules as she did not include a section entitled "Material Facts in Dispute" in her response brief, therefore, Republic's statement of material facts should be admitted as undisputed. (Dkt. 39 at 2-3). Republic also complains that Parnell "neither attached an appendix to the brief, nor relied exclusively on evidence already in the record" therefore, the Court should only consider factual assertions that are supported by citations to record. *Id*. at 3.

Southern District of Indiana's Local Rule 56–1 provides that, a movant is obligated to include in its brief a "Statement of Material Facts Not in Dispute" containing the facts "that are potentially determinative of the motion" and "as to which the movant contends there is no genuine issue." S.D. Ind. L.R. 56–1(a). Within twenty-eight days after the motion is filed, the non-movant must file and serve a response brief that includes a section entitled "Statement of Material Facts in Dispute" that identifies determinative facts and controverts those facts. L.R. 56–1(b). The Court may deem facts admitted without controversy to the extent they are supported by admissible evidence and not specifically controverted. In addition, L.R. 56–1(f). Federal Rule 56(c)(1) and Local Rule 56-1(e) require the parties to support each fact a party asserts with a citation to admissible evidence, such as a deposition, document, or affidavit.

Parnell is self-represented in this action. Although *pro se* litigants are not exempt from compliance with the local rules, courts must liberally construe the pleadings of individuals that proceed *pro se,* but the Court is not required to search the record to support a *pro se* litigant's position. *Greer,* 267 F.3d at 727; *see* L.R. 56-1(h). In addition, district courts have considerable discretion to determine how and when to enforce their Local Rules. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017).

Although Parnell's response brief does not include a section entitled "Material Facts in Dispute" as required, it does include a section entitled "Material Facts Not in Dispute" in which she lists the facts that she disputes. (Dkt. 36). The Court is able to discern which facts Parnell disputes, and based on its reply brief, it appears that Defendant can as well.  In its discretion, the Court will not deem such facts admitted on account of a technicality. However, the Court will not scour the record, and Parnell must support each fact she asserts with a citation to admissible evidence, such as a deposition, document, or affidavit. *See* Federal Rule 56(c)(1) and Local Rule 56-1(e).

## B.    **Factual Background**

Parnell, a Black woman, began working for Republic in 2016 as a customer service representative (Dkt. 33-1 at 12 pp. 21:14–22). She has been promoted several times and received multiple pay raises. *Id*. at 12–13 pp. 21:17–22:5. In 2021, Parnell was promoted to Account Manager, the position she holds today. *Id*. In her role, Parnell is responsible for proactively maintaining and retaining relationships with existing customers for commercial and industrial waste services, which includes visiting customers in the field regularly, meeting various performance metrics, and other duties. *Id*. at 38 pp. 47:8–18.

3

In 2022, Parnell began reporting to Gibbons as her manager, and within six months, Parnell alleges she began experiencing discriminatory treatment from Gibbons. *Id*. at 23–24 pp. 32:20–33:1. For example, under Gibbons' leadership, her team of five African American members was reduced to just two.  In addition, Parnell was denied $40,000.00 in commissions after resolving issues on a key account, and was instead given a $500.00 bonus. (Dkt. 1 at 7).  And "when Parnell had a bad month resulting in a loss of business, Gibbons publicly highlighted her performance during a team meeting by creating a slide showing only Parnell's loss." (Dkt. 36 at 26).

## 1.  The Performance Improvement Plan ("PIP")

In June 2023, Republic placed Parnell on a Performance Improvement Plan ("PIP") based on areas they found Parnell's performance needed improvement (Dkt. 33-4 at 4). The PIP stated the following:

> During the past several months, it has become increasingly evident that you have not been performing to the level of expectations for an Account Manager. On several occasions, you were counseled about this unacceptable performance with regards to Customer Service Issues, specifically around lack of responsiveness. Additionally, within the last month, there have been discrepancies in mileage expense reports as well as logged activity that doesn't correlate to the mileage history. Republic Services values you as an employee, and it is your leadership team's intent to make you fully aware of this situation and to assist you in improving your work performance. However, it is important that you realize the responsibility to improve is yours alone. You are being placed on a written improvement plan. For the next 90 days, June 30, 2023, to September 23, 2023, your work will be closely monitored by myself and others as necessary.

*Id*.

Concerning the discrepancies in mileage expense reports and in logged sales activity, Parnell uses an application ("app") called "Motus" that she turns on to record miles driven on company business so she accurately receives monetary reimbursement for mileage. She is required to turn the app off when she is using her vehicle for personal matters (Dkt. 33-1 at 48–50 pp. 66:6–

68:13). Parnell understood that she was required to deduct any personal mileage from her Motus logs before submitting them for reimbursement. *Id*. at 49 pp. 67:3–9.

Prior to being placed on the PIP, Parnell would, for some months, leave her Motus app on for personal appointments such as chiropractor appointments. *Id*. at 67 pp. 85:1–9. Parnell admitted that there were discrepancies in what she submitted as her Motus logs and what she should be reimbursed. She informed Gibbons that such discrepancies were unintentional and that her Motus app was malfunctioning (Dkt. 36 at 8). To take responsibility for the errors, Parnell voluntarily forfeited her May 2023 expense payout. *Id*.

Another basis for the PIP related to timely submitting expense reports, which were due to be turned in by the first week of the following month in which the expenses were incurred (Dkt. 33-4 at 4). Parnell admits to submitting her expense reports late, but her late submissions were due to the Motus app malfunctioning (Dkt. 36 at 11).

Another basis for the PIP related to Parnell's recording of sales meetings and activity (Dkt. 33-4 at 4). Specifically, Republic disagreed with Parnell's recording of 10 meetings for one customer when she had only one meeting with the customer although she discussed many of the customer's different properties during that one meeting (Dkt. 33-1 at 62–66 pp. 80:14–84:19). This recording procedure was common practice among all Account Managers (Dkt. 36 at 11).

Finally, the PIP addressed customer service-related issues (Dkt. 33-4 at 4). Republic had received several complaints from customers about service-related issues on accounts for which Parnell was responsible (Dkt. 33-5 at 3). One of the customers threatened to separate their relationship with Republic over issues with Parnell. *Id*. When Republic investigated the situation, they discovered billing errors resulting in Republic crediting the customer $8,500.00. *Id*. This billing error occurred because of a dispute over pricing, and Parnell could not approve account

5

pricing independently (Dkt. 36 at 12). After completing the PIP, Parnell was returned the account and on July 10, 2025, she was able to resign the customer and sell them a $31,000.00 compactor unit (Dkt. 36-1 at 59).

Parnell successfully completed her PIP in October 2023 and has continued in her employment as an Account Manager since (Dkt. 33-1 at 85–86 pp. 103:17–104:7). In her 2023 performance review, issued on February 28, 2024, Parnell received a "needs improvement" rating (Dkt. 36-1 at 26). Then, in her 2024 performance review, issued on February 17, 2025, she received a "meets expectations" rating (Dkt. 33-4 at 2).

### 2.  Republic's Denial of a Telework Day

In August 2023, on a date when she was scheduled to work in the field, Parnell asked if she could work remotely following a car accident "while she tried to figure out if the insurance was going to give her a rental car" as they had given her a car with a damaged bumper. (Dkt. 33-1 at 102 pp. 126:3–23). Parnell's request was denied, and she was told that if she could not be customer-facing, she would need to either take PTO or use FMLA. *Id*. at 111 pp. 150:4–7. Parnell points to three Caucasian coworkers who were allowed to work remotely. Coworker, Diana, was allowed to telework for ten days when she had COVID. *Id*. at 111 pp. 150:9–13. Coworker, Cindra, was allowed to work remotely when her mother was ill and in the hospital, and Gibbons worked remotely while attending his mother's emergency room visit (Dkt. 36 at 15).

### 3.  Parnell's EEOC Charge

On December 14, 2023, Parnell filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Republic alleging that she was discriminated against when she was placed on the PIP while other Caucasian coworkers engaged in similar behavior but were not; the same coworkers were allowed to work remotely while she

6

was not; she was not allowed to do ride-alongs or shadow new clients; she was monitored after the PIP; and an internal investigation into her claims of discrimination concluded that there was no wrongdoing (Dkt. 33-4 at 15–16). Parnell's EEOC charge also stated her belief that this was a hostile work environment. *Id*. at 16. Parnell asserts that she included a claim of retaliation in her EEOC charge, but the record does not reflect such claim.

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to

relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.    DISCUSSION

Parnell asserts the following claims in her Complaint form: (A) discrimination in violation of Title VII in the form of (1) being placed on the PIP, (2) being denied the opportunity to work remotely, (3) Republic withholding commission from her, (4) sales leads being disproportionately given to Caucasian employees, (5) denial of a merit-based increase in pay, (6) that she was monitored more closely than others, (7) that her internal complaint was dismissed without adequate explanation, and (8) for failing to be promoted; (B) a hostile work environment; and (C) retaliation (Dkt. 1). However, Parnell did not allege all of these charges in her EEOC charge, causing some claims to be barred.  Before turning to the merits of Parnell's claims, the Court will discuss the claims that must be barred.

"In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099–1100 (7th Cir. 2013). Republic argues that

8

Parnell's claims of discrimination are limited to discrimination based on her June 2023 PIP, the denial of working remotely, not being able to shadow clients, and a statement about how an internal investigation found no wrongdoing (Dkt. 32 at 11). Republic contends that all other allegations, including Parnell's claims of retaliation are barred because they were not raised in her EEOC charge and are not reasonably related. *Id*. The Court agrees as to some of the claims.

Parnell's EEOC charge specifically alleged discrimination based on being placed on the PIP, being denied the ability to work remotely on that one day, not being allowed to do ride-alongs or shadow new clients, being monitored after the PIP, the internal investigation concluded that there was no wrongdoing, and that Republic created a hostile environment (Dkt. 33-4 at 15–16). Parnell's EEOC charge makes no mention of a merit-based pay increase being denied, commissions being withheld, sales leads being given to Caucasian coworkers, failing to promote her, or retaliating against her. Accordingly, these claims must be barred.

The Seventh Circuit has held that "while technicalities are particularly inappropriate in a statutory scheme like Title VII in which laymen, unassisted by trained lawyers, initiate the process, the requirement of some specificity in an EEOC charge is not a mere technicality." *Reynolds*, 737 F.3d at 1100 (cleaned up). Parnell failed to provide minimally adequate factual specificity into her allegations of discrimination for denial of a merit-based pay increase, commissions being withheld, sales leads being given to Caucasian coworkers, failing to promote her, and retaliation.

Parnell argues that these claims are reasonably related because they arise out of the same series of events. However, to be "like or reasonably related to an administrative charge, the relevant claim and the administrative charge must, at minimum, describe the same conduct and implicate the same individuals." *Id*. (cleaned up). Here, the EEOC could not have plausibly investigated claims for failure to promote or retaliation because Parnell made no mention of a job application

or protected activity. Parnell concedes that the commission issue was not included in the EEOC charge (Dkt. 36 at 3). Moreover, Parnell did not provide any mention of a denial of a pay increase or even allude to events concerning such event.

Accordingly, because Parnell failed to raise claims of discrimination in the form of the denial of a merit-based pay increase, commissions being withheld, sales leads being given to Caucasian coworkers, failing to promote her, and retaliation, these claims are barred. Republic's Motion for Summary Judgment is therefore **granted** as to these claims.

A.     **Discrimination**

Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may prove discrimination under Title VII by using either the direct method or the indirect, burden shifting method. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). But regardless of how one chooses to proceed, at summary judgment, courts determining whether discrimination under Title VII occurred ask whether the evidence "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor [such as disability] caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (stating that to survive summary judgment, "a plaintiff must show a genuine issue of material fact exists regarding whether his disability was the 'but for' reason for the adverse action[.]"). This evidence must be considered as a whole instead of asking whether any piece of evidence proves the claim by itself. *Ortiz*, 834 F.3d at 765.

Under the direct method, a plaintiff must offer direct or circumstantial evidence that supports an inference of intentional discrimination. Direct evidence requires "an admission of

10

discriminatory intent." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Circumstantial evidence can include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Alexander*, 739 F.3d at 979. The evidence "must point directly to a discriminatory reason for the employer's action . . . and be directly related to the employment decision." *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013).

Under the indirect method, courts utilize the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Courts employ this burden-shifting analysis as a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under the familiar *McDonnell Douglas* burden-shifting method, a plaintiff must first prove: (1) that she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *Fane v. Locke Reynolds LLP*, 480 F.3d 534, 538 (7th Cir. 2007). If the plaintiff demonstrates these elements, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). "If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

Parnell's remaining discrimination claims are (1) she was discriminated against because of her race by being placed on the PIP and (2) she was discriminated against when she was denied the ability to work remotely.

Parnell does not provide any direct evidence of race discrimination. While she provides various arguments about what her coworkers and others can and might testify about, she has not submitted affidavits, depositions, or any other admissible evidence which would verify such assertions.[2] Accordingly, Parnell's assertions are mere speculation, and it is well settled that "[s]peculation does not suffice to create a genuine issue of fact that defeats summary judgment." *Circle City Broad. I LLC v. AT&T Servs.*, 99 F.4th 378, 384 (7th Cir. 2024) (citing *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016)); *see also Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (cleaned up).

Under the indirect method, the parties agree that Parnell is a member of a protected class—Black—but Republic contends that her discrimination claims fail on the final three elements. The Court will address each in turn.

1. **Republic's Legitimate Performance Expectations**

Republic argues that Parnell has failed to demonstrate that she was meeting their legitimate performance expectations because she admits to the failed metrics that were the subject of the PIP itself (Dkt. 32 at 12). Republic argues that the PIP addressed discrepancies in mileage expense reports and in logged sales activity that did not correlate to mileage history, and Parnell admits (1)

---

[2] For example, Parnell argues that multiple witnesses—including Darius, Taylor, Diana, Cindra, and Melissa—"can testify that Plaintiff was treated less favorably than her colleagues" (Dkt. 36 at 20). However, Parnell does not provide any affidavits, deposition testimony or other documents to support her statement, and her inadmissible hearsay proffer cannot be considered by the Court.

12

there were in fact discrepancies between the mileage as she recorded it and where she actually traveled on company business. And (2) she logged and was reimbursed for mileage that was personal in nature such as medical appointments and personal errands. Republic also adds that the PIP addressed failure to timely submit expense reports, which Parnell admits she failed to do, and the PIP addressed unacceptable performance in completing in person scheduled meetings and accurately recording sales activity, which Parnell also admitted to doing.

In response, Parnell does not deny the above referenced failures, but argues that these issues were "promptly addressed, often caused by technical problems beyond her control, and documented in IT tickets." (Dkt. 36 at 19). She argues that she voluntarily forfeited a portion of her pay and reimbursement to correct the errors concerning expense reports demonstrating good faith and commitment. She concludes by adding that her Caucasian colleagues were not monitored or disciplined for similar failures.

Parnell cannot show that she met Republic's performance expectations. Her belief that she took responsibility and encountered technical problems does not negate the fact that she admitted to the performance issues contained in the PIP. "A plaintiff's admission to the misconduct at issue prevents her from establishing that she was meeting her employer's legitimate expectations." *Rapier v. Capital One Auto Fin., Inc.*, No. 1:07-cv-0798, 2009 WL 48147, at *6 (S.D. Ind. Jan. 6, 2009) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006)). Parnell therefore fails to meet her burden of establishing that she was meeting Republic's legitimate expectations at the time of being placed on the PIP.

## 2. **Adverse Employment Action**

Republic also argues that Parnell did not suffer an adverse employment action (Dkt. 32 at 13). With regard to her PIP, "performance improvement plans, particularly minimally onerous ones

. . . are not, without more, adverse employment actions." *Id.* (quoting *Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, 674 F. Supp. 3d 494, 516 (S.D. Ind. 2023)) (cleaned up). Republic argues the PIP did not significantly change Parnell's employment status and points out that Parnell admits the PIP was not particularly onerous. Republic also argues that being denied one telework day is clearly not an adverse employment action as there is no evidence that it had any tangible employment impact and did not result in any loss of pay, benefits, or employment status.

In response, Parnell argues that denial of remote work, exclusion from ride-alongs or shadowing opportunities, and heightened scrutiny affected her ability to perform her role (Dkt. 36 at 19). She contends that the PIP directly caused her to be denied her merit-based pay increase, which in turn reduced the commissions she earned, since commissions are calculated as a percentage of salary. In support of this argument, Parnell cites *Anderson v. Amazon.com, Inc.*, No. 23-cv-8347 (AS), 2024 WL 2801986 (S.D. N.Y. May 31, 2024) for the proposition that "[c]ourts have recognized that performance improvement plans can constitute adverse employment actions even when they do not involve pay reductions or termination, particularly when inconsistently applied." (Dkt. 36 at 26).

Parnell has failed to meet her burden of showing she suffered an actionable adverse employment action. For a harm to be adverse, "a Title VII plaintiff 'must show some harm respecting an identifiable term or condition of employment. What the [plaintiff] does not have to show . . . is that the harm incurred was "significant," or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.'" *Thomas v. JBS Green Bar, Inc.*, 120 F.4th 1335, 1336–37 (7th Cir. 2024) (quoting *Muldrow v. St. Louis*, 601 U.S. 346, 355 (2024)) (alteration in original). The Seventh Circuit has held that "delaying training, denying vacation times, transferring shifts, and considering family circumstances in a

biased way are all adverse action." *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 470–71 (7th Cir. 2025) (citing *Thomas*, 120 F.4th at 1336–37). By contrast, the Seventh Circuit "held, albeit in an unpublished order, that a swapped role that was in the same building and did not affect the employee's position, job duties, salary, or benefits was not an adverse action" because "those changes were within the scope of [the employee's] role and were mostly temporary inconveniences." *Id*. at 471 (internal quotation marks and citations omitted).

Here, Parnell has failed to meet her burden of showing she encountered an actionable adverse action. While denying vacation times may constitute an adverse action, that is not what happened here. Republic merely denied the ability to work remotely based on a damaged front bumper and told Parnell that she would need to use PTO or FMLA if she could not be customer facing on that day. The Court is unaware of any authority indicating that the denial of a single day of remote work constitutes an adverse action. In addition, while Parnell claims she was monitored more closely and was limited in her sales ride-along opportunities, she has not presented any evidence nor pointed to any authority indicating that such events constitute an adverse action. Accordingly, the denial of remote work and alleged monitoring and limited ride-along opportunities were not adverse actions.

As the Seventh Circuit held in *Arnold*, being placed on a PIP without changes to an employee's tasks, compensation, benefits, vacation times, or working hours, does not constitute an adverse action. *Id*. By Parnell's own admission she didn't do anything different while on the PIP, (Dkt. 33-1 at 81–82 pp. 99:16–100:10), and there is no evidence that any of her compensation, benefits, or working hours changed while on the PIP. Importantly, Parnell failed to exhaust her administrative remedies as required by Title VII and thus, even if Parnell had evidence of a later denial of a merit-based pay increase, which she does not, that claim is barred.

The New York district court case Parnell cites does not help her. In *Anderson*, the Southern District of New York determined that an employee who alleges being placed on a PIP resulting in "more and worse tasks, tarnishing her permanent record, dampening her prospects of a promotion or raise, temporarily preventing her from transferring, excluding her from certain meetings and projects, and so on[,]" plausibly stated a claim for the purposes of an adverse action on a motion to dismiss. 2024 WL 2801986, at *11. However, the Seventh Circuit, in *Arnold*, distinguished between case like *Anderson*, where an employee's placement on a PIP caused changes to the terms and conditions of their employment, and the case before it where the employee was placed on a PIP but did not experience any changes to the terms or conditions of their employment. 142 F.4th at 471 n.23. *Anderson* is also distinguishable on another ground; *Anderson* dealt with a motion to dismiss whereas, here, the matter is before the Court on summary judgment and Parnell has provided no admissible evidence that she suffered an adverse action.

### 3.  Other Similarly Situated Individuals

Republic also argues that Parnell cannot show that similarly situated individuals of a different race were treated more favorably (Dkt. 32 at 14). Republic argues that Parnell merely identifies a handful of Caucasian employees whom she argues were treated more favorably, but she has offered no admissible evidence nor any citation to the record nor any authority that indicates that any of the named individuals could be appropriate comparators. In her response, Parnell argues that various Caucasian coworkers performed worse than her but were not placed on a PIP. She contends that her coworker Camille Bill went an entire year without meeting employment expectations, yet upper management excused her due to personal circumstances (Dkt. 36 at 27). Parnell also argues that she was treated differently because she was denied the ability to work remotely while others were not.

Parnell is correct that being placed on a PIP for subpar performance while her Caucasian colleagues consistently missed their performance metrics and were not placed on PIPs would be sufficient to show that similarly situated employees were treated more favorably. However, Parnell has failed to provide any admissible evidence demonstrating that is what occurred. Parnell merely speculates as to what some of the would-be comparators will testify about, and proffers inadmissible hearsay statements as to what she believes their testimony would be. Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 111 (7th Cir. 2004) (citation omitted). Though Parnell has identified certain individuals, there is no admissible evidence in the record that could convince a trier of fact to accept her version of events. Accordingly, her unsupported claims that she was placed on the PIP while her Caucasian colleagues were not for similar conduct does not suffice.

In addition, Parnell is not similarly situated to the other individuals who were granted the ability to work remotely. Parnell submitted photographs of her damaged front bumper, and requested to work remotely while waiting on her insurance and the status of a new rental car. (Dkt. 36-1 at 73–77). In contrast, the other individuals experienced either being infected with Covid-19 or having a family medical emergency where their mother was in the hospital. Plainly, an employee wanting to work from home because of a damaged front bumper and an employee who was allowed to work from home due to either a contagious illness or a family medical emergency are not similarly situated, especially when the former's vehicle was entirely operable. It is well-settled that in employment discrimination cases, courts in the Seventh Circuit do not sit as a super-personnel department that reexamines an entity's business decisions. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). The Court finds it reasonable to have employees come in to work even

when they experience minor car troubles but allow employees to work remotely when they have a contagious disease or have a family medical emergency, and absent evidence of a discriminatory intent, the Court may not second guess such a decision by an employer. Accordingly, these individuals were not similarly situated.

In conclusion, Parnell's claims of discrimination concerning the denial of the ability to work remotely and being placed on the PIP fail, as she has met her burden of establishing a prima facie case of discrimination.

Finally, the Court looks at the evidence as a whole and finds that no reasonable jury could conclude that Parnell was placed on the PIP or denied the ability to work remotely on a single day because of her race. Accordingly, Republic's Motion for Summary Judgment is **granted** for those claims.

**B.      Hostile Work Environment**

"A work environment is hostile under Title VII '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (alteration in original) (internal citation omitted)). To succeed on a hostile work environment claim, a plaintiff must show: (1) the environment was both subjectively and objectively offensive; (2) the harassment occurred because the plaintiff was a member of a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014).

"In determining whether the conduct is sufficiently severe or pervasive to be actionable, [courts] look at all of the circumstances, including the frequency of the discriminatory conduct,

18

how offensive a reasonable person would deem it to be, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013).

In her response, Parnell argues that being placed on the PIP along with Gibbons publicly highlighting her performance at a team meeting, "when she had a bad month resulting in loss of business" constituted a hostile work environment (Dkt. 36 at 26). This claim fails on elements one and three because these actions are neither objectively offensive nor severe or pervasive. Being placed on a PIP for admitted performance issues is not offensive, and the only evidence in the record concerning the alleged slide showing Parnell's losses is an email from her to Gibbons and her colleagues where Parnell asks for "a monthly year to date tracking of that new slide that was presented yesterday in the meeting of the new business/blended goal." (Dkt. 36-1 at 79). No reasonable jury could conclude that this behavior is offensive, severe, or pervasive. Accordingly, Parnell's hostile work environment claim fails.

### IV.    CONCLUSION

For the reasons discussed above, Republic's Motion for Summary Judgment (Dkt. 31) is **GRANTED**. Parnell's Title VII claims are **dismissed with prejudice**.

In addition, the Motion to Strike Parnell's Response in Opposition to the Motion to Dismiss (Dkt. 25) is **denied as moot**.

Final judgment shall issue separately.

**SO ORDERED**.

Date:    3/16/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

19

Distribution:

JANICE PARNELL
7547 Cole Wood Blvd.
Indianapolis, IN 46239

Craig M. Borowski
LITTLER MENDELSON, P.C. (Indianapolis)
cborowski@littler.com

Sarah Richards Doty
Littler Mendelson P.C.
SDoty@littler.com